AF Approval SW

Chief Approval CUR

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:16-cr-372-T-36AEP

WALTER FAMBRO

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, WALTER FAMBRO, and the attorney for the defendant, Adam Allen, Assistant Federal Public Defender, mutually agree as follows:

## A. Particularized Terms

### 1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts Four and Seven of the Indictment. Count Four charges the defendant with theft of government funds, in violation of 18 U.S.C. § 641. Count Seven charges the defendant with possession of access devices, in violation of 18 U.S.C. § 1029.

### 2. Maximum Penalties

Counts Four and Seven carry a maximum sentence of ten (10) years imprisonment, a fine of $250,000, a term of supervised release of not more than three (3) years, and a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as

corporations. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Four are:

First: That the money or property described in the indictment belonged to the United States;

Second: That the Defendant embezzled, stole, or knowingly converted the money or property to his own use or to someone else's use;

Third: That the Defendant knowingly and willfully intended to deprive the owner of the use or benefit of the money or property; and

Fourth: That the money or property had a value greater than $1,000.

The elements of Count Seven are:

First: That the Defendant knowingly and with intent to defraud possessed 15 or more devices;

Second: That the devices were counterfeit or unauthorized access devices; and

Third: That the acts affected interstate or foreign commerce.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One, Two, Three, Five, Six, Eight, Nine, and Ten, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Internal Revenue Service.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to

withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), and 1029(c)(1)(C), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $326,133, representing the amount of proceeds obtained as a result of the offenses charged in Counts Four and Seven. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly

noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The defendant further agrees that the United States is seeking a money judgment because, as a result of the defendant's actions, the criminal proceeds cannot be located despite the exercise of due diligence. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any

documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for

acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for

collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the

background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial

affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not

such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Based upon a complaint which they received on September 1, 2013, the Hillsborough County Sheriff's Office ("HCSO") issued an alert for a car stop of a black BMW which Walter Fambro ("Fambro") was driving. Sheriff's deputies stopped that car, with Fambro driving in it. He was detained and arrested and charged with misdemeanor battery, felony possession of marijuana with intent to deliver, and other offenses.

HCSO deputies did an inventory search of the vehicle. On the passenger seat, they found a shoe box with a number of envelopes which contained what appeared to be marijuana. The deputies also found other evidence on the floorboard of the car, including 29 debit cards in the names of numerous other individuals. They also found ledger notebooks with column after column of victims' personal identification information ("PII") scrawled on the notebook pages and what appeared to be patient forms from St. Joseph's Hospital in Tampa. Fambro also had a laptop computer, an I-Pad, and two cell phones in the car. Fambro claimed the electronic devices belonged to him.

Sometime after his arrest, the defendant agreed to waive his rights and to talk to deputies. In that statement, he indicated that he had learned a few years earlier that he could make money with PII, so he decided to try to get into that enterprise. He claimed that he first had gotten names from finding a knapsack full of them and had traded those, selling them to marijuana clients in exchange for their stash of other names. Later on, he decided to exchange Green Dot debit cards for more names. He'd exchange five cards for a "stack" of 100 names from his marijuana clients. He lamented that many of the names he thus obtained did not work when he tried to use them for tax filing purposes.

As far as the paperwork and forms from St. Joseph's Hospital, Fambro stated that he had gotten those documents a long time before. He later changed his statement to reflect that he had received them from a client but that he did not know how that individual had obtained the hospital patient forms.

In a later statement, the defendant admitted to attempting to file fraudulent tax returns with some of the names but claimed that they had not been successful. He claimed that he had opened the debit cards which he had in his possession by using his laptop but that he had not put any money on those cards. He also insisted that he never swiped those cards or used them at ATMs or local stores.

Among the multitude of debit cards (which constitute "access devices") inside Fambro's BMW, HCSO deputies found a Green Dot debit card in the name of AC. Green Dot records reflect that 3 separate tax refund deposits were wired to that account. The first, in the amount of $3,103, was deposited into this account on July 29, 2011, deriving from the tax return of HD. The second deposit to this Green Dot account came on September 30, 2011. On that date, a refund of $9,288 was deposited there, deriving from the tax return of EE. The third deposit, in the amount of $9,676, came into this account on May 8, 2013, deriving from the tax return of AC & BW.

IRS records reflect that a Form 1040 for HD for tax year 2010 was filed on September 18, 2011. It requested a refund of $3,475. After the deduction of fees, the IRS sent a refund in the amount of $3,103 to the HD account. On the ledger sheets in Fambro's car, deputies located HD's name, his date of birth, and Social Security number, with a check mark alongside the entry.

Similarly, the IRS received a 2010 Form 1040 in the name of EE on September 18, 2011. That tax return requested a refund of $9,288. The IRS sent that amount by wire to the Green Dot card in the name of AC. Information also revealed that EE had died on or about September 15, 2011, about 3 days before the filing of the tax return.

The same pattern repeated with respect to the May 8, 2013 refund from the filing of the AC & BW 2012 Form 1040. That return was filed with the IRS on April 24, 2013. The return generated a $9,676 refund to the AC Green Dot account. Obituary records reflect, however, that AC had died on November 24, 2012, well before a return had been filed on her behalf on May 8. AC's PII, including her date of birth and Social Security number, were also found in a ledger in Fambro's car, with a hand-written check mark next to it.

Records show that the AC debit card account was used many times at retail establishments in the Tampa area. The account was used at the Ragz Boutique in Tampa (a business where, at about the same time, records reflect multiple uses of a TW debit card, one of the other many cards found in Fambro's car upon his arrest), at a specific Walmart that was also a store where the TW debit card was also used multiple times, and at Champs, yet another retail shoe/clothing establishment in Tampa where TW's card was also used many times during the same time period.

The AC debit card was also used for numerous withdrawals of cash at a Tampa 7-11 store. Interestingly, the withdrawals at the 7-11 via the AC card began on May 8 and were made in increments of $400. A review of records pertaining to the JH debit card (another card in Fambro's car) revealed that the 7-11 cash withdrawals of $400 from that account had ended after May 7, 2013, when the balance of the fraudulent tax refund money in the JH account was about $22. Thus, the possessor of the AC card started to use that card to make cash withdrawals right about the time that the balance of refund money on the JH card had petered out.

Officers also found copies of patient records, largely from the Radiology Department at St. Joseph's Hospital in Tampa, in Fambro's car at the time of his arrest. These records included 167 sheets containing numerous patients' PII. When the IRS began to review those records and analyze the identities contained in them, they discovered that 24 patient names from those records had been the subject of fraudulent income tax returns that had been filed with the IRS. These included returns in the names of GP, ES, and SL, all of whom verified to the IRS that they had not filed the tax returns in question. In fact, the tax returns filed using the names of the St. Joseph's Hospital patients had all been filed through using TurboTax and the forensic examination of the laptop in Fambro's car revealed that the laptop had made contact with Intuit (TurboTax) for the purpose of filing returns on a number of occasions. Computer forensic examination of that laptop also showed that it had been used to contact

TurboTax about tax returns connected to over 70 taxpayer victims related to this scheme, including GP, ES, and SL and two other patients from St. Joseph's Hospital.

The use of TurboTax to file the ES, SL, and TW tax returns caused the computer being used to file the returns to wire a signal to TurboTax servers in California. TurboTax then transmitted the returns by wire to an IRS service center in West Virginia. The IRS did not release any refunds on these returns, but if it had, it would have verified them and transmitted them by wire to an IRS service center in New York. Next, after the IRS would have received that wire, it would have then wired the requested refunds to the debit card accounts recorded on the returns. These returns, therefore, had a clear impact on interstate commerce.

In addition, the same analysis of the Fambro laptop indicates that that laptop had accessed Turbo Tax with respect to the Social Security account numbers of numerous other victim taxpayers. Officers found the names and other PII of these victims on ledger sheets in Fambro's possession or on debit cards in his possession at the time of his arrest on September 1.

The actual loss to the IRS from the fraudulent refund payments associated with this scheme was $326,133. The intended loss (successful or not) from all of the tax returns associated with this scheme is approximately ~~$2,569,522~~. $2,243,389.00

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 14th day of November, 2016.

A. LEE BENTLEY, III
United States Attorney

Walter Fambro
Defendant

Jay L. Hoffer
Assistant United States Attorney

Adam Allen, Esquire
Attorney for Defendant

for Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

L:_Cases\Criminal Cases\F\Fambro, Walter_2013R02135_JLH\p_plea agreement.docx